## 9748

BARFIELD *ET AL.* v. BARNES *ET AL.*

(93 S. E. 425.)

1. APPEAL AND ERROR—DECISIONS APPEALABLE.—Where after plaintiffs' title had been quieted and defendants had been enjoined from setting up any adverse claims, defendants were given leave to take testimony to be used in attacking the decree, and an order was entered modifying the decree so as to permit defendants to move for an order vacating it, such orders affected plaintiffs' substantial rights and were appealable.

2. JUDGMENT—ATTACK—LACHES.—A delay of over 10 years after· the youngest defendant became of age in attacking a judgment rendered on stipulation between counsel on the ground of a false statement in the stipulation is not excused by showing that the false statement was not discovered until shortly before institution of the attack, for it was open to discovery when the decree was rendered.

2—108

3. JUDGMENT—VACATION—GROUNDS.—Where a decree enjoining defendants from questioning plaintiffs' title was based on the validity of a prior judgment to which defendants were parties, the fact that an agreed statement of facts, referring to service of process on defendants in such former action, erroneously recited service on them in another action does not warrant vacation, it being obvious that the Court took the agreed statement as referring to the action which it treated as a bar; there being no evidence of service in the record other than the agreed statement.

4. INFANTS—GUARDIAN AD LITEM—JUDGMENT.—Where summons is duly served on minors, they are brought within the jurisdiction of the Court, and subsequent irregularities in the appointment of a guardian *ad litem* do not render the judgment void.

5. JUDGMENT — CONCLUSIVENESS — MATTERS CONCLUDED. —A decree for complainant is conclusive against all defenses which were or could have been presented.

6. JUDGMENT—VACATION—POWER OF JUDGE AT CHAMBERS.—A Judge at chambers cannot set aside, modify, or open a final judgment.

7. JUDGMENT—STAY OF EXECUTION—POWER OF JUDGE AT CHAMBERS.— While a Judge at chambers can temporarily stay execution of a final judgment and may, where a decree was rendered by fraud, accident, mistake, or even by defendant's excusable neglect, temporarily stay execution until application can be made to the proper Court for permanent relief, it is improper for the Judge at chambers to make an order authorizing defendants to move for vacation of a decree enjoining them from questioning plaintiffs' title.

8. COSTS—SECURITY FOR COSTS—NONRESIDENTS—COPARTIES.—Where several of defendants petitioning for vacation of a decree against them were residents of the State, the rule requiring nonresidents to give security for costs is inapplicable, and a motion to require defendants to give such security was properly denied.

9. INFANTS—PRESUMPTIONS—CARE OF PROPERTY.—The duty and responsibility of safeguarding the rights of infants rests primarily on Judges of the Circuit Court, and it must be presumed that a decree affecting the rights of an infant was jealously scrutinized.

Before MAULDIN, J., Camden, February, 1916. Reversed.

Action by Henry Barfield and others against Henry C. Barnes and others. There was a decree for plaintiffs, and many years thereafter on motion of defendants, orders allowing them to take the deposition of their mother to per-

petuate her testimony to be used in the defense of the action should the decree be set aside and modifying the decree to permit defendants to move to open the decree and allow them to defend anew, were entered, and plaintiffs appeal.

The stipulation of counsel and the decree referred to are as follows:

It is agreed between counsel for the plaintiffs and the defendants:

(1) That the plaintiffs hold the lands as alleged in the first and third paragraphs of the complaint; that is, that said lands are a part of the lands devised by the will of George Stratford to the mother of the defendants for life, with remainder to the defendants, her children; that the plaintiffs held title from W. H. Lyles, who bought at master's sale of the premises, made under decree for foreclosure in case of *J. T. Hay v. Sarah J. Barnes.*

(2) That George Alden held mortgage authorized by decree in case of *Geo. W. Barnes et al. v. Henry C. Barnes et al.,* and that same passed to J. T. Hay, his assignee, by his deed of assignment for the benefit of creditors.

(3) That the records of the two actions be offered, and that J. T. Hay and W. D. Trantham would testify that the return of service of summons in the first mentioned case on the minor defendants, except Henry C. Barnes, was made by the affidavit of Thos. S. Myers, in 1880; that such return was filed with the record by J. T. Hay; that return of service of summons on Henry C. Barnes was made by the sheriff of Greenville county, was also filed with said record by J. T. Hay, and that it was in the record up to within the last ten months.

(4) That in 1875, when the action of *Geo. W. Barnes et al. v. Henry C. Barnes et al.* was begun, none of said defendants were over the age of 14 years, except the said Henry C. Barnes, and that all lived with their parents at the time except Henry C. Barnes.

Decree of Judge Townsend:

In this action the plaintiffs allege that they are the owners of certain lands described in the complaint, and that the defendants claim some interest in said lands, and that the claims of the defendants constitute a cloud upon the title of the plaintiffs which they seek to have removed. The defendants have all been properly served with the summons and are before the Court; a guardian *ad litem* has been properly appointed for such of the defendants as are minors; the defendants have answered; the cause has been fully argued before me by counsel for the plaintiffs and defendants. The lands described in the complaint were devised by the late George Stratford to his granddaughter, Sarah J. Cook, who afterwards intermarried with George W. Barnes, for life, and after her death to her children, who are the defendants in this action.

On the 31st day of July, 1875, George W. Barnes and his wife, Sarah J. Barnes, instituted an action in this county against their children, then *in esse,* Henry C. Barnes, Preston B. Barnes, W. Doby Barnes, Minnie Barnes (now Minnie Barnes Rawlinson), Daisie Barnes (now deceased), George S. Barnes, Ida Barnes (now Ida Barnes Price), Joseph Eugene Barnes and Benjamin Cook Barnes, and other contingent remaindermen under the will of George Stratford. The summons in this action was personally served on all of the defendants, as appears on the records in said cause. Defendants appeared, a guardian *ad litem* was appointed for the minor defendants and answered, and everything appears to have been done in a regular and orderly manner. The object of this action was to obtain the authority of this Court to mortgage the lands described in the complaint therein for the purpose of obtaining money to improve the property. By a decree of this Court in the cause, made on the 21st of October, 1875, George W. Barnes and Sarah, his wife, were authorized to mortgage the lands to George Alden for an amount stated in said order. The

mortgage was made to said George Alden, a merchant of Camden, S. C., and, said George Alden having made an assignment for the benefit of his creditors, said mortgage passed to J. T. Hay, assignee, and W. D. Trantham, agent of creditors, under said deed of assignment.

Some time in the year 1880 the said J. T. Hay, assignee, and W. D. Trantham, agent of creditors of George Alden, began an action in this county against George W. Barnes and Sarah, his wife, to foreclose the mortgage above referred to. In this action said George W. and Sarah Barnes appeared, and asked that their children, remaindermen under the will of George Stratford, be made parties defendants. By an order of this Court they were made parties, were duly served with the summons in the action, a guardian *ad litem* was appointed for them, all of the defendants answered, the issues were referred to the master, the master made a report, and a decree for foreclosure was made by this Court. Under this decree a sale was made and the premises were bought by J. T. Hay, who received titles. J. T. Hay subsequently made titles to Sarah J. Barnes, who executed a mortgage to him to secure the purchase money. This mortgage was foreclosed by said J. T. Hay under decree of this Court, and at a sale thereunder Wm. H. Lyles purchased the lands, and from him the plaintiffs derive title.

The only claim set up by the defendants in this action, by which they seek to defoul or cast a cloud upon the title of the plaintiffs, is that in the original proceedings of George W. Barnes and Sarah, his wife, against Henry C. Barnes *et al.,* the Court did not obtain jurisdiction of the persons of the minor defendants, in that, while the record shows that the summons was regularly served upon the minors, said record does not show that said summons was served upon the father, mother, or guardian of such minors; and it is alleged now that unless such fact appears upon the record the Court is without jurisdiction. It would be a very technical construction of the statute to so hold, especially after

the lapse of 25 years, and disturb rights vested under a decree of this Court on no other or higher grounds. There is no doubt that all of the parties, the parents and the minor children, were in Court, proceedings seem to have been careful and orderly, there is no pretense of surprise, advantage taken of any one, or fraud. All presumptions are in favor of the regularity of proceedings in this Court. I must presume that the Court inquired into the regularity of everything, especially in the absence of any evidence showing affirmatively any irregularity; for, while the record may not show that the summons was served on the parents or guardian of the minor, it does not show affirmatively that it was not so served. The decree of October 21, 1875, is a judgment of this Court, and, in my opinion, is conclusive of all questions that should or could have been raised by any of the parties then before the Court.

But, in addition to this, all of the parties were again before this Court in the case of *J. T. Hay, Assignee, and W. D. Trantham, Agent of Creditors, v. Geo. W. Barnes et al.,* in 1880 and 1881, in which action the same property rights were involved. No question is made before me as to the regularity of the proceedings in that action, so that the defendants are certainly estopped and bound by the judgment therein.

It is the judgment of the Court:

1. That the plaintiffs are the owners in fee of the lands described in the complaint herein.

2. That the defendants, and none of them, have any right, or title, or claim in or to any of the lands described in the complaint.

3. That the defendants, and each and every one of them, be enjoined from asserting or in any manner setting up, any claim or title to said lands, in disparagement of the title of plaintiffs.

4. That the defendants pay the costs of this action.

*Messrs. L. A. Wittkowsky* and *Wm. H. Lyles,* for appellant, cite: *As to presumption of regularity and jurisdiction:* 79 S. C. 302; 42 S. C. 512; 61 S. C. 569.

*Messrs. David E. Anthony* and *J. Fraser Lyon,* for respondents, submit: *Order of February 11, 1916, is not appealable:* 119 U. S. 53, 54; 146 U. S. 536, 545; 132 U. S. 91, 93; 73 S. C. 198, 199; 73 S. C. 227, 230; 53 S. C. 129, 131. *Perpetuating testimony:* Civil Code, sec. 3985; 20 Ga. 777; 16 Enc. Pl. & Pr. 364; 32 Brev. 299, 308, 318; 20 Am. Dec. 137; 22 Wall. 238. *Vacating judgment:* 2 Hill Eq. 152; 67 Md. 465; 30 Md. 271; 12 Atl. 290; 15 Enc. Pl. & Pr. 221, 223; 17 S. C. 435; 23 S. C. 187; 25 S. C. 275, 283.

July 11, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This action was brought in the Court of Common Pleas for Kershaw county, in March, 1900, and was heard by Judge Townsend, who rendered his decree, dated September 12, 1900. The decree and the stipulation of counsel upon which the issues were submitted to the Court will be reported. Judge Townsend states clearly the history of the litigation, the issues made by the pleadings, and that upon which defendants specially relied in argument before him. There was no appeal from his decree, and nothing was done by defendants to obtain relief from it, until 1916, when they applied to Judge Mauldin, at his chambers, in Richland county, for the order appealed from. The first order, dated February 11, 1916, permits defendants to take the deposition of their mother, to perpetuate her testimony, to be used in the defense of this action, if the Court should grant their proposed motion to open the judgment and allow them to defend anew, or, in the prosecution of another action to

recover the land, on the falling in of the life estate of their mother, if that should be allowed. The second order, dated May 22, 1916, modifies Judge Townsend's decree, so as to permit defendants to move the Court for the order above indicated. The appeal from the first was heard at the last October term, that from the second at the last April term of this Court. As they depend upon the same facts and principles, both appeals will be considered in this opinion.

The preliminary objection of defendants that these orders are not appealable is untenable. They not only involve the merits, but affect substantial rights of plaintiffs.

The validity of Judge Townsend's decree is now assailed, 15 years after its rendition, and 10 years after the youngest infant defendant became of age. No excuse is offered for such laches, other than the alleged discovery, in December, 1915, of an alleged false and misleading statement in the stipulation upon which the issues were submitted to the Court. The excuse is insufficient; for that stipulation has been in the record all these years, and the alleged false statement appeared upon its face, and was, therefore, as open to discovery upon investigation of the record in 1900 as it was in 1915.

The stipulation was signed by J. T. Hay and W. D. Trantham, as attorneys for plaintiffs. Both have since died; and defendants' laches has deprived plaintiffs of their testimony relative to the alleged false statement made by them, and other alleged irregularities in the proceedings, in which they were interested as parties or attorneys, with the details and circumstances of which they were more familiar than any person now living. But Hay and Trantham were both men of honor and integrity of character, whose standing at the bar should and does repel any inference of intention to deceive or mislead the Court or opposing counsel; and the known skill, ability and diligence of the Court and opposing counsel (Mr. C. L. Wink-

ler and Hon. M. L. Smith, now Judge of the Fifth Circuit)
warrant the inference that the alleged false statement had
no such injurious effect upon the rights of defendants as
their counsel would have us believe.

The statement which is too harshly characterized as hav-
ing been false and misleading and inferentially as having
been intended to be so, is found in the third paragraph of
the stipulation.    It is:

"That J. T. Hay and W. D. Trantham would testify that
the return of service of summons in the first mentioned case
on the minor defendants, except Henry C. Barnes, was
made by the affidavit of Thos. S. Meyers, in 1880; that such
return was filed with the record by J. T. Hay," etc.

Turning to the stipulation, it will be seen that the first
mentioned case is that of *J. T. Hay v. Sarah Barnes,* which
was an action to foreclose the mortgage given by Mrs.
Barnes to Hay for the same land, which Hay had bought
at the sale for foreclosure of the Alden mortgage.   The
action of *J. T. Hay v. Sarah Barnes* had no minor defend-
ants.   It was not brought until 1890.   The judgment
therein was not in question.   It had no bearing on the
issues, except to show that plaintiff's chain of title was
derived through that sale from the original or Alden mort-
gage.   The reference, therefore, to that case, as the one to
which the testimony of Hay and Trantham was applicable,
was so manifestly a mere clerical error that it is inconceiv-
able that it could have misled any one.   It must have been
as apparent then as it is now that it was intended to refer
the testimony of Hay and Trantham to the record of 1880,
and we have no doubt it was so understood and treated by
the Court and all the attorneys in the case.

Attentive consideration of Judge Townsend's decree
shows that he had before him the record in each of the pre-
vious actions.   It shows, too, that he examined in detail and
with care those of 1875 and 1880.   He must, therefore,
have referred the testimony, as to the last proof of service

on the minor defendants, to the record of 1880, for it was applicable to no other, as that was the only one in which there were minor defendants, except the record of 1875, and that showed on its face that the minor defendants had been served by J. T. Mickle. When Judge Townsend found, as he did, that the minor defendants in the action of 1880 had been served with the summons, he must have based that finding on the testimony of Hay and Trantham, as referable to that case, for otherwise there was no proof of such service before him, as there was none in the record. Its absence unaccounted for would certainly have arrested his attention, for the pleadings put the validity of that judgment in issue. The erroneous reference in the stipulation was clearly harmless.

As to the alleged irregularities in the appointment of the guardian *ad litem* for the minor defendants in the action of 1880, Judge Townsend had in mind, no doubt, several decisions of this Court, particularly *Lyles v. Haskell*, 35 S. C. 391, 14 S. E. 829, and *Robertson v. Blair*, 56 S. C. 96, 34 S. E. 11, 76 Am. St. Rep. 543, in which it had been held that service of the summons upon minors, in the manner prescribed by the statute, brings them within the jurisdiction of the Court, and that subsequent irregularities in the appointment of a guardian *ad litem* for them does not render the judgment void, but, at most, only voidable; and that such judgment will not be avoided, unless it appears that substantial injustice has been done to the minors, especially when innocent purchasers have acquired rights under the judgment.

No doubt, too, counsel who then represented defendants had those decisions in mind; and, being satisfied, from the testimony of Hay and Trantham, that the minors had been legally served with the summons, and, perhaps, being informed more in detail of the facts attending the appointment of the guardian *ad litem,* they became satisfied that the irregularities were more apparent than real, could easily be

explained, and were not of substantial merit, and, for those reasons, they decided to make their chief assault upon the judgment of 1875, which authorized the Alden mortgage, upon the validity of which their clients' cause really depended.

And that was Judge Townsend's opinion; for he rested his decree upon the estoppel of that judgment, holding that it was "conclusive of all questions that should or could have been raised by any of the parties then before the Court." He mentions the judgment of 1880, only as an additional ground of estoppel. Therefore, it would not help defendants, if it had been held then or if it should be held now, that they were not properly made parties to the action of 1880, because the holding that they were concluded by the judgment of 1875 was equivalent to holding that, though they may have been proper parties to the action of 1880, their presence was not necessary to enable the Court to convey a good title in fee simple to the purchaser under the judgment in that case, for the rights of the mortgagee had become vested under the judgment of 1875; and their father and mother, who had executed the mortgage for them by order of the Court, were before the Court.

But be all this as it may, the same issues that are now sought to be made by defendants with regard to the validity of the judgments of 1875 and 1880 were made, or could and should have been made, before Judge Townsend; therefore, upon well settled principles, his decree is conclusive of the validity of both of those judgments.

There is another reason why these orders cannot be sustained. A Judge at chambers cannot set aside, modify, or open a final judgment. *Middleton v. Ice Co., 97* S. C. 457, 81 S. E. 157, and cases cited by the Court.

Judge Mauldin's orders allow defendants to do what Judge Townsend had enjoined them not to do. To be sure,

a Judge at chambers can temporarily stay the execution of a final judgment. But these orders were not of that nature. Nothing was being done or about to be done in the execution of Judge Townsend's decree which would have affected the rights of the parties. The decree was self-executing.

It by no means follows, as suggested, that, if a final injunction should be rendered against a party by fraud, accident, mistake, or even by his excusable neglect, or in a case where the Court had not acquired jurisdiction of his person, that he is remediless. Certainly he could apply to the Court that granted such injunction for relief, without being in contempt, or, if an attempt were being made to execute such a judgment, so as to change the status or injuriously affect the rights of the party, a Judge at chambers could stay its execution, until application could be made to the Court for permanent relief.

As some of the petitioning defendants are residents of this State, the rule of Court requiring nonresident plaintiffs to give security for costs is not applicable; hence there was no error in refusing plaintiff's motion to require defendants to file security for costs.

We sympathize with defendants in the loss of their property. But their own parents asked to be allowed to mortgage it, on the ground that it would best promote their interest, in that it would secure for them proper maintenance and education, which otherwise they were unable to give them. As we see it now in the light of subsequent events, the request was unwise, and unwisely granted. Their parents ought not to have been allowed to mortgage so much as 1,862 acres of land to secure a debt of $3,000.

However, the duty and responsibility of safeguarding the rights of infants rests primarily upon the Judges of the Circuit Court. We must presume that they scrutinize with jealous care, as they certainly should, every proposed order or decree affecting the rights of those who are incapable of protecting themselves, and see

to it that their interests are not improperly or unnecessarily endangered, or sacrificed.

Regrettable as their situation is, defendants have had their day in Court. There must be an end to litigation. It cannot go on forever. Sound public policy demands that judgments and judicial sales be upheld, where it can be done without violating any statute or settled principle of law, especially when the rights of innocent purchasers have supervened.

Orders reversed.